OPINION
Defendant-appellant Arthur Matthews appeals the April 6, 2001 Judgment Entry of the Licking County Court of Common Pleas which memorialized a jury verdict of guilty on one count of aggravated assault, and sentenced appellant accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On November 12, 2000, appellant was involved in an altercation with Michael Hadnot. Appellant had a romantic relationship with Mr. Hadnot's estranged wife, Sandra. At the time of the altercation, Mr. Hadnot and his wife were separated. Mr. Hadnot and Sandra had an argument on the telephone on the evening of November 12, 2000. When the conversation ended poorly, Mr. Hadnot decided to "move" Sandra's car to a different location without her knowledge or permission. Mr. Hadnot admitted to "moving" Sandra's car in a similar fashion on at least one other occasion.
Shortly after Mr. Hadnot moved Sandra's car, Sandra called him, demanding the location of the vehicle. At that time, Mr. Hadnot chose not to inform Sandra of the location of the vehicle, and told her he "did not have the car." During the same conversation, appellant also spoke to Mr. Hadnot, as did appellant's sister, Barbara Matthews.
Because Sandra could not find her vehicle, she went to Mr. Hadnot's residence with appellant and Barbara Matthews. Although this had been the marital residence, Mr. Hadnot had changed the locks after Sandra moved out. At the time of the incident, both Mr. Hadnot and his wife had no contact orders against each other.
At trial, Mr. Hadnot testified he left his residence to buy cigarettes, and as he walked onto the porch, he saw his wife. A verbal argument ensued. Sandra struck Mr. Hadnot, who, in turn, pushed her off the porch. Barbara Matthews, seeing the exchange, charged at Mr. Hadnot. Mr. Hadnot pulled out his pocket knife, which Mr. Hadnot had modified to look more like a straight razor. Upon seeing the knife, Barbara Matthews backed up, and proceeded down the steps. Mr. Hadnot attempted to get back into his home, but was unable to unlock his door. Mr. Hadnot testified while he tried to open the door, appellant, Sandra, and Barbara began throwing cinder blocks from his yard toward him:
 Q. How many cinder blocks were thrown at you at that time?
 A. Oh, several. They were coming from several different directions. I had several cinder blocks around the house, so they just kept on coming, more than I can count.
 Q. Were there any cinder blocks on the porch other than the ones they threw?
A. No.
* * *
Q. * * * were they whole blocks, parts of blocks?
 A. They were parts of blocks, whole blocks, halves of blocks — I have several different blocks around the yard.
* * *
 Q. Your wife, would she be able to throw something like that size (of cinder block) at you?
A. No, not really. No, not at all.
 Q. Did you see Mr. Matthews throw anything like this at you?
A. Yes, he did.
Q. Did he say anything when he was throwing them you?
 A. Well, when I [sic] threw the first block, he said, "Take this, motherfucker."[1]
Q. That was after you pushed [Sandra]?
 A. That was a warning for me because when I heard that, I turned around and here comes a block.
 Q. Okay. And you were trying to get in your house at this time?
A. That's when I was trying to get in the house.
Q. Now, were you successful in getting in your house?
 A. No. The blocks was coming so fast that I couldn't get my key — see, I have a porch light, and I didn't turn the porch light on, and you have to have — I have three keys that's identical, but they're color coded, so I kept getting the wrong key in the lock trying to dodge the blocks and — and turning the key was almost impossible.
* * *
 Q. Okay. Now, after these rocks started being or excuse me, after these bricks were starting to be thrown at you, what do you do then?
 A. Well, they were coming so regular, I said that — to myself that they were going to hit me and I never get a chance to do anything about it. At that point, I decided I'd charge out and try to scare them. So I charged out the front yard. My wife was to my right. Barbara Matthews is to my left. So I charged out the yard.
Q. Who were you charging towards?
A. I was charging at Arthur Matthews.
Q. And why was that?
 A. Well, I figured if I can get to him, it would be enough intimidation that the other two would disperse.
Q. Okay. Were you successful in reaching Mr. Matthews?
 A. No, I wasn't. I was hit on the hip from my from my left by a cinder block.
Q. Okay. Where did that block hit you at?
A. Right over here (indicating).
* * *
 * * * Well, when the block hit me, it more or less knocked my leg from under me, and I stumbled out the yard. At that point, Arthur Matthews came up and crushed me in the head with a block similar to the one on the floor.
Q. That would be a full block?
A. Yes, it was.[2]
Appellant called only one witness, Patrolman Christian D. Maring. Patrolman Maring testified he investigated the incident for the City of Newark. In that capacity, he spoke to the victim three times and obtained a written statement. Patrolman Maring confirmed the victim stated he tried to get back into his residence, but could not because he could not make the keys to the door work and he had trouble because he was dodging bricks. Thereafter, appellant rested his case.
On February 21, 2001, after hearing all evidence and deliberating, the jury found appellant guilty of the offense of aggravated assault, in violation of R.C. 2903.12. The trial court ordered and received a presentence investigation. In an April 6, 2001 Judgment Entry, the trial court memorialized the jury's guilty verdict, and sentenced appellant to six months in prison. It is from this judgment entry appellant prosecutes his appeal, assigning the following error for our review:
 THE CONVICTION OF THE DEFENDANT-APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
In appellant's sole assignment of error, he maintains his conviction was against the manifest weight of the evidence. Specifically, appellant maintains the jury lost its way by failing to apply the affirmative defense of self-defense. We disagree.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins[3]. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact.[4]
"The elements of the crime and the existence of self-defense are separate issues. Self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged."[5]
The defendant asserting the affirmative defense of self-defense "[does] not dispute the existence of these elements, but rather [seeks] to justify [his] actions * * *."[6]
To establish self-defense, a defendant bears the burden of proving by a preponderance of the evidence:
 . . . (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that his only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger. . . .[7]
Appellant maintains this Court may rely solely on the testimony of the victim to show each and every element of self-defense. If each element of self-defense is met through the victim's testimony, appellant maintains this Court can only conclude the jury lost its way in failing to apply the doctrine to the matter sub judice. We disagree.
After examining the entire record and weighing the evidence and reasonable inferences, we cannot find the jury lost its way and created such a manifest miscarriage of justice requiring a reversal. It is true the victim testified he rushed toward appellant with a knife drawn in an attempt to "get" him. However, the victim also testified appellant had thrown bricks or blocks at him and he was struck by a cinder block in the legs before reaching appellant. It was only after Mr. Hadnot had first been injured that appellant "came up" and "crushed" Mr. Hadnot in the head. If believed, this testimony was sufficient to support the jury's conclusion self-defense was inapplicable on any of the three prongs announced in Thompkins, supra.
It appears from the victim's testimony, appellant, at the very least, participated in the creation of the violent situation by throwing bricks or blocks at the victim. After the victim had his legs knocked from under him, appellant came up and crushed the victim in the head with a block. A jury could find the appellant was no longer in imminent danger of death or great bodily harm and without a means of escape when he did so. Further, faced with the danger of the confrontation, appellant chose to stay and further participate in the altercation instead of retreating to avoid the danger. Because he was in an open yard, it would be perfectly reasonable for a jury to assume that he had many means of escape aside from the use of force.
We do not find the jury lost its way in choosing not to apply the affirmative defense of self-defense. Accordingly, appellant's sole assignment of error is overruled.
The April 6, 2001 Judgment Entry of the Licking County Court of Common Pleas is affirmed.
By: HOFFMAN, J., EDWARDS, P.J. and FARMER, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
This matter comes before the court on appellant's motion to reverse judgment due to appellee's failure to timely file an appellate brief. Appellant filed his notice of appeal on April 16, 2001. Thereafter, appellant was granted one extension of time in which to file his brief. Appellant filed a timely brief on June 18, 2001. On July 13, 2001, appellant filed a motion to reverse the judgment of the trial court due to appellee's failure to file a timely appellate brief. We reserved judgment on this matter until the merit review.
On August 14, 2001, appellee field a motion for an extension of time in which to file its appellate brief. We granted appellee's motion on August 17, 2001. Because we granted appellee additional time, and because appellee did file its brief within the time alloted in the extension, appellant's motion is overruled.
[1] Mr. Hadnot later testified he was unable to lift and throw any cinder blocks due to a medical condition.
[2] Transcript at 79-84.
[3] State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v.Martin (1983), 20 Ohio App.3d 172, 175.
[4] State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
[5] State v. Martin (1986), 21 Ohio St.3d 91, 94, 21 OBR 386, 388,488 N.E.2d 166, 168
[6] See, Id.
[7] State v. Thomas (1997), 77 Ohio St.3d 323, 326, 673 N.E.2d 1339.